Estate of Leslie B. Baynham, Deceased, First Security National Bank & Trust Company, Administrator, and Elizabeth W. Baynham v. Commissioner.
Estate of Baynham v. Commissioner
Docket No. 360-64.
United States Tax Court
T.C. Memo 1966-54; 1966 Tax Ct. Memo LEXIS 227; 25 T.C.M. (CCH) 310; T.C.M. (RIA) 66054; March 16, 1966
*227 A family controlled four corporations selling shoes at retail in different cities. The store at Cincinnati became insolvent, owing suppliers. The store at Lexington gave notes to the suppliers and paid them. Respondent determined that such payments represented dividends to the stockholder who signed the notes as president of the Lexington store. Held, on the evidence, such payments did not constitute dividends. William R. Bagby, 1107 First Nat'l Bank Bldg., Lexington, Ky., for the petitioners. Sanford S. Neuman, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax for the calendar years 1958, 1959, and 1960 in the respective amounts of $4,637.52, $14,699.76, and $15,985.27. The sole issue remaining for decision is whether payments made in 1958 and 1959 by a corporation controlled by Leslie B. and Elizabeth W. Baynham to creditors of another corporation also controlled by them represented constructive dividends to Leslie B. Baynham. Stipulations disposing of other issues will be given effect under Rule 50. Some facts are stipulated. Findings of Fact The stipulations of fact and *228 the exhibits attached thereto are incorporated herein by this reference. During the taxable years 1958, 1959, and 1960 Leslie B. Baynham and Elizabeth W. Baynham were husband and wife and resided in Lexington, Kentucky. They filed joint Federal income tax returns for such calendar years with the district director of internal revenue at Louisville, Kentucky. Baynham died on February 15, 1962. Leslie and Elizabeth Baynham had two daughters - Elizabeth Baynham Rhodes and Jane Baynham Milward. Leslie and Elizabeth Baynham and their daughters and sons-in-law owned the stock of four corporations: Baynham Shoe Company, Inc., a Kentucky corporation, which operated a retail shoe store in Lexington; Baynham's, Incorporated, a Kentucky corporation, which operated a shoe store in Louisville, Kentucky; Baynham Shoe Company, Inc., a Tennessee corporation, which operated a shoe store in Nashville, Tennessee; and Baynham Shoe Company, Inc., an Ohio corporation, which operated a shoe store in Cincinnati, Ohio. These are referred to herein as the Lexington store, Louisville store, Nashville store, and Cincinnati store, respectively. Baynham was president and Charles D. Rhodes, Jr., his son-in-law, *229 was vice president of the Lexington store. The books and records of all of the stores were kept at Lexington. No formal directors' meetings were held, nor were corporate minutes maintained, in the operation of any of these corporations. No formal dividends were declared or paid to the stockholders of any of these corporations. [1]
The shares of stock of the corporations were held as follows: Lexington
Louisville
Nashville
Cincinnati
Leslie B. Baynham
321
400
100
176
Elizabeth W. Baynham
726
500
95
95
Elizabeth B. Rhodes
87
10
30
Charles D. Rhodes, Jr.
60
72
Jane B. Milward
87
10
30
H. B. Milward, Jr'
45
Lexington store
245
Louisville store
174
Treasury stock
80
157
Total
1,500
1,000
500
500
*230 In 1954 the Cincinnati store was in financial difficulties and was late in paying for merchandise bought for sale. Certain manufacturers of shoes began to require guarantees of payment before shipping orders to the Cincinnati store. Baynham signed notes payable to these manufacturers to induce them to furnish shoes to the Cincinnati store. This store had operating losses in 1955, 1956, and 1957 and closed its doors in August 1958. At that time it owed accounts to Fredelli Footwear, Johansen Bros. Shoe Co., Inc., Palizzio Shoes, Inc., Capezio, and Hamilton Shoe Co., hereinafter collectively referred to as the suppliers, which had manufactured shoes for the Cincinnati store and accepted notes in payment. These accounts aggregated $41,335.85. New notes were signed and given these suppliers providing for payment each month for 12 months of one-twelfth of the amount due each supplier. These notes were signed "Baynham Shoe Company, Inc., Leslie B. Baynham, President." The Lexington store paid these notes, paying $9,558.06 in 1958 and $31,777.79 in 1959. The inventory of shoes on hand in the Cincinnati store in August 1958 was transferred to the stores in Lexington, Louisville, and Nashville. *231 This inventory was not included in the cost of goods sold by the Cincinnati store. The parts of such inventory transferred to the other stores were included in the cost of goods sold by such stores. It had been a customary practice to lend or transfer supplies among the several stores during earlier years. Failure to pay the suppliers in this case might have impaired the ability of the continuing stores to get merchandise from these manufacturers thereafter. Respondent determined that there were deficiencies in the income tax liabilities of the Lexington store for the taxable years 1956 through 1959. The adjustments resulted primarily from the disallowance of deductions, and included for 1958 and 1959 the disallowance of payments made on the obligations of the Cincinnati store as described above. The Lexington, Louisville, and Nashville stores filed petitions in bankruptcy in April 1962. Subsequent to a hearing before the referee in bankruptcy, the claim of the United States against the Lexington store for tax deficiencies in the amount of $15,995.72 for the years 1956 through 1959 was settled by agreement that the total additional tax owed was $3,000. The settlement did not *232 reflect a settlement of each adjustment made by respondent. In 1958 Baynham had been engaged in the shoe industry for more than 40 years and had a good reputation. The Lexington store's Federal income tax returns for 1958 and 1959 reported net operating losses computed as follows: 1958
1959
Net sales
$378,453.95
$390,435.42
Less: Cost of goods sold
229,142.94
231,099.72
Gross profit
149,311.01
159,335.70
Less: Expenses incurred
149,800.07
153,370.01
Operating profit
5,965.69
Less: Assumed Notes
Payable Baynham's,
Inc., Cincinnati
9,558.06
31,777.79
Net operating loss
10,047.12
25,812.10
The balance sheets on such returns showed as liabilities accounts payable in the following amounts: Date
Amount
12/31/57
$59,192.60
12/31/58
59,861.52
12/31/59
88,173.93
Payment of the notes by the Lexington store to the creditors of the Cincinnati store did not constitute taxable distributions to Leslie B. Baynham in 1958 and 1959. Opinion In 1958 and 1959 the Lexington store paid some $41,000 to the suppliers of shoes for the Cincinnati store, which was insolvent and unable to pay these accounts. Respondent determined *233 that these payments were made on behalf of Leslie B. Baynham and represented distributions of dividends to him as a stockholder of the Lexington store. Baynham and his wife were controlling stockholders of both stores and of two other stores, also retailers of shoes. Respondent contends that the notes given the suppliers were personal obligations of Baynham and that their payment by the Lexington store was a payment of his debt. The petitioners' position is that the notes to the suppliers covering the liability of the Cincinnati store were notes of the Lexington store, signed by Baynham as president thereof, and that the Lexington store received a benefit from the payments as it was desirable to retain the good will of these suppliers for its own business in the future. Respondent contends that the suppliers were aware of Baynham's reputation and standing after more than 40 years in the shoe industry and were requiring notes signed by him personally rather than as the obligation of another corporation. Respondent argues that since there was no corporate action authorizing Baynham to obligate the Lexington store for the debt of the Cincinnati store, he would have been personally *234 liable on the notes if the creditors had taken legal steps to collect on them. Respondent says that since the petitioners have not produced the notes or copies thereof, it is to be presumed that the form of the signatures was unfavorable to them. The only issue presented for determination herein turns upon the form of, and the signatures upon, the notes given the suppliers in 1958 covering the liabilities of the Cincinnati store. This is a question of fact. We have found as a fact that the notes were the obligations of the Lexington store and were signed "Baynham Shoe Company, Inc., Leslie B. Baynham, President." The notes are not in evidence, nor are copies. After they were paid by the Lexington store, they would presumably have been returned to it marked "paid," and, if not then destroyed, would be among its records at the time the corporation was taken over by the receiver in bankruptcy in 1962. Testimony was introduced by the petitioners, without objection, to the effect that Baynham signed these notes in the name of the Lexington store. Rhodes, Baynham's son-in-law and vice president of the Lexington store, so testified. The accountant for the Lexington store, who prepared the *235 notes, similarly described them, as did also petitioners' counsel, who saw them at the time of signature. The tax returns of the Lexington store report payments on "Assumed Notes Payable, Baynham's, Inc., Cincinnati," as deductions in computing operating losses. This tends to support the position that the notes were the obligation of the Lexington store. The liability of the Lexington store on the notes is not here in dispute. That corporation paid them. Regardless of any lack of formal corporate authorization to assume the obligation, it is clear that the officers of the corporation considered it necessary to do this in order to assure and protect its own source of supplies. The respondent filed a claim in the bankruptcy proceeding of the Lexington store. It is to be presumed that prior to the filing of such claim and prior to the determination of the deficiencies herein respondent's agents had opportunity to examine the records of the bankruptcy court, as well as the records of the stores. Obviously the records of the bankruptcy court were as readily available to the respondent as to the petitioners. The respondent not only failed to offer evidence as to the availability of the *236 notes, but also failed to offer testimony of any witness to refute the testimony of petitioners' witnesses. There is no proof that Baynham signed the notes in his individual capacity. The only evidence is that he did not. On the basis of the evidence presented, we hold for the petitioners on this issue. Decision will be entered under Rule 50. Footnotes
1. Although the stores declared no formal dividends, they advanced funds to the stockholders on open accounts. In 1959 the respondent determined deficiencies against the Baynhams and the Rhodes and the surviving stores for the years 1953 to 1955. The determinations against the individuals were based in part upon alleged taxable distributions from the stores. Petitions were filed in the Tax Court. The cases were settled by stipulations agreeing to certain deficiencies, and decisions were entered in 1960.↩